[Civ. No. 7541. First Appellate District, Division Two.—April 11, 1931.]

HELEN BOCCALERO, Respondent, v. W. M. WAD-LEIGH, Appellant.

J. Hampton Hoge and A. Dal Thomson for Appellant.

Ford & Johnson for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendant to recover a judgment for damages alleged to have been suffered in an automobile collision. The defendant answered and a trial was had before the court sitting with a jury. The jury returned a verdict in the sum of $4,000. The defendant made a motion for a new trial, his motion was denied, and from the judgment entered on the verdict he has taken this appeal and has brought up typewritten transcripts. The accident happened about 9 P. M. on Sunday the twelfth day of May, 1929. It was the theory of the plaintiff, and she called witnesses in support of her contention, that on the date above mentioned she and her husband and Mr. and Mrs. Verdenaga had been out on the north end of San Pablo Avenue and were traveling south toward Oakland in a Jewett automobile. The men were on the front seat and the women were on the back seat—the plaintiff on the right-hand side. The traffic was considerable—there were two lines of cars moving south and two lines of cars moving north. A double street-car track occupies the middle of San Pablo Avenue, one track for north-bound cars and another track for south-bound cars. A part of the avenue is paved. As one travels south the right-hand side of the

street is not paved but graveled. The witnesses for the plaintiff contended that for several blocks they had been traveling along in one of the traffic lines leading to the south and that they moved with the traffic, sometimes going fifteen miles an hour, sometimes going twenty-five miles an hour. It was an admitted fact that the speed limit in that neighborhood is forty miles an hour. Continuing, the story as told by the plaintiff's witnesses was to the effect that after they had passed Schmidt Lane, a distance of thirty-five yards or more, the defendant's car approached from the rear. At least one of the plaintiff's witnesses testified that for approximately a half mile back the defendant had been driving his Hupmobile at approximately forty miles per hour, passing other vehicles, and in this manner falling in and falling out of line. When the Jewett automobile was at a point thirty-five yards south of Schmidt Lane and in the line of traffic as above stated the Hupmobile came forward with great velocity and hit the Jewett car in the rear. The plaintiff testified that the impact was of such violence that she was thrown against the back of the seat in such a way as to injure her hip and that then she rebounded to the front, hitting her head and shoulder with great severity. Some of her witnesses testified that the impact was so severe that the Jewett car was shoved to the front some distance and that the right rear corner of the car was mashed and that the spare tire which was attached to the rear end was shoved to one side. After the accident the car was found to be so damaged that it would not run under its own power and it was towed away. The theory of the defendant was quite different. He and the passengers in his car testified that the Jewett car came through Schmidt Lane from the east, and, executing a left-hand turn, that it crossed through the traffic and had arrived at a place on the westerly car track and was at an angle of about forty-five degrees with said track when the defendant's car approached from the north. Some of the defendant's witnesses stated that when their car was approximately two car-lengths behind they observed the position of the car ahead and that the defendant put on his brakes and slowed down to seven or eight miles an hour, but could not stop in time and that the defendant's car hit the Jewett car on the rear right-hand corner a slight but not a violent blow.

█ The defendant claims that the evidence is insufficient to support the verdict and in this connection he asserts that there was no evidence that he was negligent. Of course, if we take the story according to his theory his claim has some support. However, it will be observed that the evidence is distinctly conflicting and in support of the judgment we are bound to take the view that the jury believed the plaintiff's witnesses and did not adopt the testimony given by the defendant's witnesses. Taking that view of the evidence it is clear that there was evidence in the record that the defendant was not necessarily exempt from liability for injuries to the plaintiff occurring in a public street by showing simply that at the time of the accident he was running at a rate of speed allowed by law. He was still bound to anticipate that he might meet persons at any point of the street and in order to avoid a charge of negligence he was bound to use ordinary care and to keep an ordinarily careful lookout for such persons and keep his machine under such control as would enable him to avoid a collision. (*Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335, 340 [208 Pac. 125, 127]; Motor Vehicle Act, sec. 113, subd. [a].) In this connection the defendant claims that the physical facts annihilate the story as told by the plaintiff's witnesses. And in this connection he emphasizes the testimony as to the point of impact on the rear right-hand corner of the Jewett car. That argument unquestionably would have weight when addressed to a jury, but when a jury adopted its own conclusions from all of the facts and circumstances no court could have the temerity to say that the particular spot of impact conclusively determines whether the story as told above by the defendant was the correct one. The defendant would dismiss the testimony given by the traffic officer who testified in behalf of the plaintiff because the traffic officer stated that the plaintiff's car was on the car track. However, it will be observed that at least one of the defendant's witnesses gave practically the same testimony. Again, we must assume that all these matters were argued to the jury.

█ In giving instructions on the subject of damages the trial court gave one instruction on the elements making up mental suffering. The defendant states that there was no evidence in the record regarding plaintiff's "worry", "dis-

tress'', ''grief'', ''mortification'', or ''disfigurement''. This statement is too broad. There was evidence that after the accident the plaintiff suffered a great deal of pain and that at the time of the trial she had less pain, but was still suffering in that respect. Her family physician testified that in the accident she suffered a concussion of the brain and a fractured skull and that it would be approximately two years before she would be entirely free from pain and dizziness caused by the injuries suffered in the accident. The defendant asserts that the law of this state confines a recovery for future mental suffering to the plaintiff's apprehension of future disability caused by the injury. We find nothing in the instruction to the contrary. The defendant further asserts that to justify an instruction on the subject there must be testimony of the plaintiff's mental state. As shown above, we think there was.

■ The court gave an instruction regarding the duties of the defendant when the case is considered under the rule as stated in *Reaugh* v. *Cudahy Packing Co., supra.* In part that instruction states '' . . . and he must in order to avoid a charge of negligence, keep a *proper* lookout for them and keep his machine under such control as will enable him to avoid a collision with other persons using *proper* care and caution, and if the situation requires, he must slow up or stop.'' (Defendant's italics.) Thereupon the defendant claims that the instruction imposed on the defendant an erroneous standard of care—one of propriety instead of that of ordinary care. He cites and relies on *Markart* v. *Zeimer,* 67 Cal. App. 363, 367 [227 Pac. 683]. The instruction attacked is No. 30. The preceding instruction No. 29 quoted section 113 of the Motor Vehicle Act as follows: ''Any person driving a vehicle on the highways of this State, shall drive the same at a careful and prudent speed, not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and no person shall drive any vehicle upon a public highway at such a speed as to endanger the life, limb or property of any other person.'' When the legislature provided the statute just quoted we think it is clear that no one would assert that the legislature was providing a rule other than that of ordinary care. No more do we believe that anyone may assert that when the trial court used the same word in in-

struction No. 30 it was laying down a rule other than that of ordinary care. Turning to instructions Nos. 15, 17 and 19 we find passages showing that the trial court was attempting to tell the jury that each of the parties litigant was bound to exercise ordinary care. Therefore, we think that there was no prejudicial error in the instructions.

█ Finally, the defendant claims that the verdict was excessive. In this behalf he lays much stress on the testimony given by certain doctors called as witnesses in his behalf, who testified that the bruise on the plaintiff's hip was slight and soon disappeared entirely. That the bruise on her shoulder was more severe, but that it had nearly, if not wholly, disappeared at the date of the trial. As to the injury to the plaintiff's head, those doctors testified that the plaintiff's skull was not fractured, and conceding that she had suffered a concussion of the brain that the injury was slight and that she had entirely recovered at the date of the trial. Those same doctors testified that the plaintiff was suffering from inflamed tonsils, which were the cause of all other symptoms of which the plaintiff complained. Of course, there was no claim that the inflamed tonsils were caused by the accident. If there was nothing else in the record the claim of the defendant that the verdict was excessive would have much merit. But there is something else in the record. Two doctors called by the plaintiff each testified that the plaintiff suffered a fractured skull. One of them testified that she would not entirely recover from that severe injury within a period of two years. As we have shown above, there was other evidence showing such violence in the impact as gave color to the medical testimony of the plaintiff's witnesses. Taking this view, as we must, in support of the verdict, it cannot be said that the verdict was excessive.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.