[Civ. No. 14034.   Second Dist., Div. One.   Aug. 5, 1943.]

ROBERT W. POE et al., Respondents, v. TALMADGE O. LAWRENCE, Appellant.

Crider, Runkle & Tilson for Appellant.

Gordon M. Snyder and Francis A. Cochran for Respondents.

WHITE, J.—Plaintiffs instituted this action to recover damages for personal injuries sustained by plaintiff Beverly Poe and consequential damages sustained by her husband, plaintiff Robert W. Poe, while riding in their automobile, operated by the latter and which was struck by another automobile operated by defendant Talmadge O. Lawrence. Plaintiffs' complaint alleged that the injuries and damages sustained by them proximately resulted from the careless and negligent manner in which defendant operated his motor vehicle. By his answer the defendant denied all of the material allegations contained in plaintiffs' complaint and by way of a further and separate defense alleged that if plaintiffs did suffer any damages the whole thereof were the direct and proximate result of circumstances beyond defendant's control and which occurred without any negligence or fault whatsoever upon his part. The cause was tried before the court sitting without a jury, resulting in a judgment for plaintiffs in the sum of $11,759.72. From such judgment defendant prosecutes this appeal.

Stating the facts in a light most favorable to the findings and judgment, as we are required to do, the record discloses testimony that the accident occurred about 11 o'clock on the night of September 5, 1941, in the city of South Gate, Los

Angeles County, a few feet west of the intersection of San Vincente Avenue and Tweedy Boulevard. San Vincente Avenue is a level, paved highway thirty feet wide, extending in a northerly and southerly direction; intersecting Tweedy Boulevard at right angles. The last named boulevard is a level, paved, through highway, extending approximately in an easterly and westerly direction. It is a through highway protected in that entire area by boulevard stop signs at all intersecting north and south streets. At the time the accident here in question occurred, the boulevard stop sign located at the northwest corner of this intersection, and facing toward the north, to apprise anyone driving an automobile in a southerly direction on San Vincente Avenue of the requirements to stop at that point, was not standing erect and apparently was down on the ground. By stipulation of the parties, Tweedy Boulevard at the point of this accident, was conceded to be a 25-mile zone, correctly posted as such for a distance of ten blocks west and seven blocks east of the intersection of San Vincente Avenue. On the northeast corner of the intersection there was a vacant lot which extended east from San Vincente Avenue for a distance of 70 feet to a duplex residence (referred to throughout the trial as the "double house"). On the night of the accident there was nothing on the vacant lot to obstruct one's vision.

Just prior to the accident plaintiffs were traveling east on Tweedy Boulevard in their Chevrolet coupé with a woman companion, while defendant was traveling west in his Plymouth sedan.

Plaintiff Robert W. Poe testified he first saw the defendant when the latter was some distance east of the double house, at which time defendant was traveling on his own right side of the highway at a speed ranging from 40 to 45 miles per hour. At about the time appellant reached the double house, where concededly he had an unobstructed view north on San Vincente for 135 feet, he commenced to turn his vehicle gradually toward the center line of Tweedy Boulevard. Mr. Poe believed, when he first saw defendant start to move toward the center, that the latter was getting into a position to make a left turn south on San Vincente. However, observing that as defendant came closer to the intersection he did not slacken his speed, Mr. Poe concluded that defendant was traveling too fast to attempt to make such a turn. As defendant's automobile entered the east boundary of the inter-

section, he crossed the center line of Tweedy Boulevard on to the south half, upon which Mr. Poe was lawfully traveling eastward. At this time, according to plaintiff Mr. Poe, the defendant's speed continued at from 40 to 45 miles per hour. Defendant continued to travel on Mr. Poe's side of the road toward the latter until the former was about two-thirds through the intersection where he collided with a Pontiac automobile driven by one William Leon Cook and which vehicle had entered the intersection going in a southerly direction and without making the boulevard stop. The Cook car collided with the right side of defendant's car and damaged the right running board toward the rear and the right rear fender as well as the right rear wheel of defendant's vehicle. After the collision with Cook's car, defendant continued on through the intersection, and a few feet west of the intersection he struck plaintiffs' vehicle head on, i.e., the right front of defendant's car struck the left front of plaintiffs' automobile. According to plaintiff Mr. Poe, defendant was still traveling 40 to 45 miles per hour at the time he collided with the plaintiffs' automobile. Plaintiff Mr. Poe testified that immediately before the collision he was on the south half of Tweedy Boulevard traveling at a speed of 20 to 25 miles per hour. When he observed defendant cross over on to the wrong side of the road, Mr. Poe applied his brakes and had skidded some 5 feet when struck by defendant's car. There were skid marks from no automobiles except that of plaintiffs.

In general defendant testified that he was traveling along Tweedy Boulevard at a rate of speed averaging 25 to 30 miles an hour on his own right side of the boulevard; that he was looking straight ahead; that he observed the Pontiac car just as it entered the intersection from the north. To quote his testimony ''I was looking straight ahead and the traffic was light and I knew that Tweedy was a boulevard stop street, and of course I was not expecting a car to come flying out of there at that speed.'' Defendant testified that the Pontiac car collided with him, causing his automobile to deviate from its course of travel and to collide with plaintiffs' automobile.

Throughout the trial it was the claim of appellant that he was free from negligence because, as he contended, he was traveling on a through highway protected by boulevard stop signs, at a proper rate of speed on the right-hand side of the road, and that he had a right to rely on the presumption that Mr. Cook, driving the Pontiac car, would obey the

law and make the boulevard stop. Defendant further contended that he did not see the Pontiac until it entered the intersection. It was further urged by defendant that the Pontiac struck his car, thereby forcing him to change his course of travel and to collide with plaintiffs' vehicle.

On the other hand it was plaintiffs' theory that defendant was negligent because after he passed the double house he had a clear view across the vacant lot of the Pontiac car approaching from the north on San Vincente; that defendant concluded that the driver of the Pontiac was not going to make a boulevard stop and the defendant decided to "Beat Mr. Cook through the intersection"; and in pursuance of such plan he started to change his course of travel as well as position on the highway by driving toward the center line of the boulevard at about the time he passed the double house and approximately 70 feet before he entered the intersection. That defendant was traveling at a speed of 40 to 45 miles an hour in a 25-mile zone, and did not at any time apply his brakes or attempt to slacken his speed. It was plaintiffs' contention that defendant was unsuccessful in his attempt to "Beat Mr. Cook through the intersection"; collided with him and then with plaintiffs' car. Plaintiffs contended that the collision could have been avoided had defendant not deviated from his original course of travel along the right-hand side of Tweedy Boulevard and had he confined his speed within the 25-mile speed limit or, as plaintiff expresses it, "he could have avoided the collision, even at his excessive speed, by merely applying his brakes and slackening his speed, without the necessity of coming to a stop." · It might here be noted that defendant's testimony was corroborated to some extent by testimony of Mr. Cook who was driving the Pontiac, but the record reveals that the trial court was not impressed with the verity of Mr. Cook's testimony because of the fact that the latter had stolen the Pontiac car which he was driving, and in rejecting Cook's testimony the trial judge said "A man who would steal, certainly won't hesitate about lying, and this young man, from his own statement, has a very deplorable record. He has been incarcerated in institutions at least four times and is an admitted thief."

It might also be noted that defendant Lawrence's experience in driving motor vehicles was limited to some five or six months; that he possessed a restricted type of operator's license which he characterized as a "permit license" or a license "whereby you were allowed to drive if you had

someone with you" (sec. 253, Veh. Code). At the time of the accident here in question defendant was not accompanied by a licensed driver. Appellant complains that the trial court gave "considerable thought" to the fact that defendant was an inexperienced driver and possessed only a limited type of driver's license. It is true that in the absence of some causal connection between the inexperience of, and form of driver's license possessed by, a party involved in an accident, and the happening of such accident, no negligence can be predicated on either the driver's inexperience or his type of license. Nevertheless the court was entitled to take those factors into consideration in determining the probability or improbability that defendant, as plaintiff contended, attempted to "beat Mr. Cook through the intersection" when he could have avoided the collision by slackening his speed and continuing along on the right-hand side of Tweedy Boulevard. When the facts of inexperience and restricted license were legally proven, the court was entitled to draw therefrom such deductions as were warranted by a consideration of the usual propensities of people, as well as the course of nature, and to ground thereon such inferences as reason would dictate (secs. 1958, 1960, Code Civ. Proc.) ■ In any event, no objection was made to this line of testimony at the trial and objection thereto cannot be urged for the first time on appeal (*Hurd v. Walker,* 9 Cal.App.2d 525, 527 [50 P.2d 1074]).

■ A review of the record herein generates the conclusion that there was substantial oral testimony which, if believed by the court, coupled with physical facts, amply supports the findings made and the judgment entered thereon. True, there was a conflict in the evidence and had a judgment been rendered for defendant it would be sustained. But that is not the test on appeal. ■ Legion of authority supports the statement that when an attack is made upon a judgment on the ground that it is unsupported by the evidence, the power of reviewing courts is limited to a determination of whether there is any substantial evidence, contradicted, or uncontradicted, which will support the judgment rendered. Therefore, on appeal from a judgment for plaintiffs in an action for damages for negligence, all conflicts in the evidence must be resolved in favor of the prevailing party. ■ Because it is the rule that all intendments are in favor of the judgment arrived at upon conflicting evidence, the fact that contradictory inferences can reasonably be drawn from the

facts in evidence does not authorize an appellate tribunal to substitute other inferences for those drawn by the constitutional and statutory arbiter of the facts. ■ Of course, if the evidence is inherently improbable it may be disregarded, but before such action is warranted there must exist a physical impossibility of the evidence being true, or its falsity must be apparent without any resort to inferences or deductions (*Whitsett* v. *Morton*, 138 Cal.App. 628, 629, 630 [33 P.2d 54]; *Arundel* v. *Turk*, 16 Cal.App.2d 293, 295, 296, 297 [60 P.2d 486]). ■ Since the record herein discloses substantial testimony to warrant the trial court in finding defendant guilty of negligence in driving upon the wrong side of the road (*Temple* v. *DeMirjian*, 51 Cal.App.2d 559, 561 [125 P.2d 544]), the court not being bound to accept defendant's version of the reason for such action, and being entitled to infer under all the circumstances and the testimony of plaintiff Robert W. Poe that defendant's presence on the wrong side of the boulevard was attributable to his unsuccessful and ill-advised attempt to "beat Cook through the intersection," we cannot disturb the conclusion arrived at by the trial court. Further evidence of defendant's negligence, if believed by the trial court, is supplied by the unreasonable rate of speed at which it was testified he was driving, in violation of law and in disregard of the safety of other users of such highway (*Matsuda* v. *Luond*, 52 Cal.App.2d 453, 458 [126 P.2d 359]). There was also evidence justifying a finding of negligence upon the part of defendant due to his failure to apply his brakes, and thereby slacken his speed, when he saw, as he clearly could have seen, had he looked, that Cook, driving the Pontiac automobile, was not going to make the boulevard stop (*Boccalero* v. *Wadleigh*, 113 Cal.App. 376, 379 [298 P. 526]).

■ Appellant's contention that he had a right to rely upon the fact that he had no reason to believe Cook or anyone else would unlawfully proceed into Tweedy Boulevard from San Vincente Avenue in violation of the boulevard stop law cannot aid him for as we have pointed out there was substantial evidence to support the finding that appellant himself was not exercising due care as he approached the intersection of San Vincente Avenue. He was not entitled, under such circumstances, to assume that Cook would exercise due care (*Doyle* v. *Loyd*, 45 Cal.App.2d 493, 496 [114 P.2d 398]). ■ One may not close his eyes to threatening danger and

blindly rely upon the assumption that the other party will use reasonable care and prudence and obey the traffic laws. Only when there is nothing in the situation to warn him of impending danger is he not guilty of negligence in relying upon such assumption (*Simonsen* v. *L. J. Christopher Co.,* 186 Cal. 786, 788 [200 P. 615] ; *Edlund* v. *L. A. Ry. Co.,* 14 Cal.App.2d 673, 675 [58 P.2d 928]). ██ Finally, the reasonableness of the conduct and actions of a person relying upon the assumption that another will obey the law is primarily a question for determination by the trier of fact (*White* v. *Davis,* 103 Cal. App. 531 [284 P. 1086]).

We find no error in the record. The judgment is affirmed.

York, P. J., and Doran, J., concurred.