[Civ. No. 17743.   Second Dist., Div. Two.   Dec. 20, 1950.]

GERALDINE ROMERO et al., Appellants, v. FLORENCE M. EUSTACE, Respondent.

Stephen Monteleone for Appellants.

Reed & Kirtland and Robert E. Moore, Jr., for Respondent.

254

WILSON, J.—■ The rule that the amount of credit to be given to the positive testimony of a witness is solely a question for the trial court is not applicable in a case in which the testimony, in the light of the undisputed facts, is so inherently improbable and impossible of belief as in effect to constitute no evidence at all. (*Bennett* v. *Chandler*, 52 Cal.App.2d 255, 261 [126 P.2d 173]; *DeArellanes* v. *Arellanes*, 151 Cal. 443, 448 [90 P. 1059].) Plaintiffs invoke this rule as one of the grounds of their appeal from the judgment in favor of defendant in their action against her for malpractice. The other ground is the insufficiency of the evidence to sustain the findings and judgment. ■ In order that the court may be justified in disregarding evidence as being inherently improbable and unbelievable there must exist a physical impossibility of its being true or its falsity must be apparent without resort to inferences or deductions. (*Peterson* v. *Peterson*, 74 Cal.App.2d 312, 318 [168 P.2d 474]; *Poe* v. *Lawrence*, 60 Cal.App.2d 125, 132 [140 P.2d 136].)

■ When there is substantial evidence, although conflicting, that sustains the judgment an appellate court will not substitute its evaluation of the evidence or its opinion as to the credibility of the witnesses for that of the trial court. (*Buckhantz* v. *R. G. Hamilton & Co.*, 71 Cal.App.2d 777, 779 [163 P.2d 756]; *Estate of Pohlmann*, 89 Cal.App.2d 563, 567-8 [201 P.2d 446].) This rule will obtain even though to some triers of fact the evidence in the instant case would have seemed so improbable, impossible and unbelievable that a judgment contrary to that now on appeal would have inevitably followed. Although some of the evidence is extremely unsatisfactory it is not of the character that warrants a reviewing court to reject it by reason of its improbability or of its physical impossibility. Since from the record we cannot say the evidence is improbable or impossible of belief, we must follow the rule so frequently announced that we must view the evidence in the light most favorable to respondent and resolve all conflicts in her favor.

■ The action is for damages for personal injuries alleged to have resulted to plaintiff Geraldine Romero from the purported careless and negligent use and application by defendant of caustic and dangerous chemicals in the irrigation of Mrs. Romero's bladder—a solution which the ordinary physician and surgeon practicing in the city of Los Angeles, in the exercise of ordinary care, would not have applied to living human tissue.

Mrs. Romero became acquainted with defendant, a doctor of osteopathy, prior to September, 1947. She told defendant she was continuously tired, not able to sleep, had to get up several times during the night, and had had difficulty with her bladder and had been receiving bladder irrigations for more than a year. Defendant consulted a urologist, Dr. Scouten, after which she gave bladder irrigations to Mrs. Romero consisting of a solution of silver nitrate and metaphen in oil. The treatments continued during September and October of 1947. On January 12, 1948, while Mrs. Romero was in defendant's office to obtain a prescription for her husband she, at the suggestion of defendant, made an appointment for the following day at which time defendant said she would try a different medication. After discussing the use of Lugol's solution with Dr. Scouten defendant, on January 13, instilled in Mrs. Romero's bladder a silver nitrate solution and metaphen in oil. After the catheter was removed defendant attached a wad of cotton the size of a pea to an applicator, dipped it in Lugol's solution which she had previously poured in a glass, and inserted it in the opening of the urethra. Upon application of the solution Mrs. Romero went into a spasm, appeared to have fainted momentarily and was suffering from such excruciating pains that defendant gave her two hypodermics for relief. When Mrs. Romero returned to defendant's office·for treatment she had to be assisted because of the severe pain she was suffering.

On January 29 plaintiff was taken to Dr. Winer, a urologist; he took her history, examined and treated her; he found her to be in severe pain; she was unable to hold her urine; there was a tenderness along the urethra which was swollen and edematous; there was also a tenderness in the trigonal region; urinalysis showed shreds of tissue, gross blood, and was positive for both streptococcus and staphylococcus. Dr. Winer made an initial diagnosis of cystitis due to a severe chemical, and a superimposed pyogenic infection due to staphylococcus and streptococcus. His opinion was based on the history which plaintiff gave of the bladder instillation that put her into a collapse and from the sloughing of the interior lining of the bladder. The doctor was of the opinion it was of a chemical origin.

It is plaintiff's theory, as shown by the record and by the argument on appeal, that her infection was not caused by the instillation of silver nitrate and metaphen in oil into her

bladder but the argument centers around the use of the solution that was applied to her urethra, the inference being that defendant did not use Lugol's solution but did apply a caustic substance. Since Mrs. Romero had been treated several times by defendant, who had instilled silver nitrate and metaphen in oil in the bladder, and since on the occasion in question plaintiff did not feel any pain until the solution was applied externally, it is her theory that a true Lugol solution was not used.

Defendant testified she obtained a new bottle of Lugol's solution from a drugstore on the morning she used it on Mrs. Romero. This testimony is verified by the druggist's invoice. The identical bottle was kept by defendant until after the institution of the instant action, when it was analyzed by a chemist and found to be Lugol's solution.

A medical witness, while testifying, drank some of the solution and stated it did not burn him. Two medical witnesses who examined Mrs. Romero and had her history gave their opinions as to what caused her pain at the time of the treatment. One said she had cystitis, the other said interstitial cystitis. Both testified in answer to a hypothetical question that in their opinion Mrs. Romero's excruciating pain was the result of cystitis and not the result of a chemical burn of the internal tissue of her bladder. The absence of evidence of instillation into Mrs. Romero's bladder of Lugol's solution, or whatever solution defendant used with the applicator, and positive evidence that such solution was applied only to the external opening of the urethra, is sufficient to sustain a finding, express or implied, that external use of such solution would not have resulted in the condition which Dr. Winer found in the interior of the bladder.

Whether or not defendant applied Lugol's solution externally or internally, whether such solution as was used was so caustic as to create the condition found in the bladder, whether the repeated use of silver nitrate, which the medical witnesses agreed is standard treatment, contributed to Mrs. Romero's condition were questions for the trial court to determine from the evidence. The redness on Mrs. Romero's thighs and buttocks may have been caused, so the record shows, by the iodine in Lugol's solution, or possibly by the admixtion of that solution and the contents of the bladder which were expelled. Since the medical experts' evidence did not harmonize in all particulars and the court has made its findings

based on conflicting evidence, and since we do not find the evidence to be inherently improbable or impossible, we cannot substitute our judgment concerning the credibility of the witnesses or the weight of the evidence for that of the trial judge.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.