Filed 3/19/13  Marriage of Rock and Kavalaris CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of LINDA M. ROCK and JOHN A. KAVALARIS. | |
| LINDA M. ROCK,<br><br>        Respondent,<br><br>v.<br><br>JOHN A. KAVALARIS,<br><br>        Appellant. | A130093<br><br>(San Mateo County<br> Super. Ct. No. FAM081572) |

Appellant John A. Kavalaris (Husband) appeals from a judgment entered on August 4, 2010 after a bench trial on issues in a marital dissolution action.[1]  Husband challenges the trial court's resolution of his claim of breach of fiduciary duty against his former wife Linda M. Rock (Wife).  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Wife and Husband were married in 1991, and had one child, who is now an adult. Wife also has three children from a prior relationship, including an adult daughter Anza Neylon.  During the marriage, Wife managed a community business and Husband was a salesman.  In 1998, Anza Neylon relocated to Hawaii and since then she has worked as an employee for the community business in Hawaii.  The parties separated on May 15,

---

[1]     The appeal also brings up for review the denial of the Husband's motion, pursuant to Code of Civil Procedure sections 657 and 662, seeking, among other things, to modify the judgment or for a new trial.

1

2004. Wife filed a petition for dissolution on September 29, 2004. Thereafter, Husband started a consulting business. In October 2006, the parties stipulated to liquidate and equally distribute certain community stock accounts. In February 2007, the parties entered into a stipulation in which Wife was awarded the community business and Husband was awarded his consulting business.

A bench trial was held on various dates in May, June and July, 2009 to resolve the parties' remaining claims. The primary dispute at trial, and on appeal, concerns the community's purported interest in certain real properties located in Hawaii, referred to hereafter as the Colony Club property and the Kuleana property. In 2001, the parties and Anza Neylon, agreed to purchase the Colony Club property, using $58,000 of community funds for a down payment and closing costs. However, the Colony Club property was never purchased because Anza Neylon cancelled the sales contract that she had signed in her name alone. Thereafter, with Husband's knowledge but not his consent, Wife unilaterally gave the community funds of $58,000 to Anza Neylon who used a portion of those funds to purchase the Kuleana property in her name alone. During this litigation in 2005, Anza Neylon repaid the $58,000 to Wife. Wife testified she used the $58,000 to pay primarily community business expenses. Husband's accountant testified the $58,000 did not appear as a loan on the community business books and was used to pay Wife's personal expenses.

In its statement of decision and judgment, as amended in response to the parties' requests for a statement of decision, the trial court made the following findings: The trial court found Wife had not breached her fiduciary duty to Husband by allowing the cancellation of the purchase of the Colony Club property. However, Wife had breached her fiduciary duty to Husband by her unilateral loan of $58,000 of community funds to Anza Neylon, who used a portion of the funds to purchase the Kuleana property. However, Wife was not found to have breached her fiduciary duty to Husband by failing to include the community on the title to the Kuleana property, by failing to request repayment of the $58,000 after Anza Neylon's refinancing of the Kuleana property (no requirement of a date certain for repayment was established by evidence), or by failing to

2

inform Husband of the repayment of the $58,000 (albeit repayment information was conveyed in the litigation process). The trial court also found Wife had not breached her fiduciary duty to Husband by falsifying employment verifications relating to Anza Neylon's employment in the community business as there was insufficient evidence to make a finding of fraud.

The trial court also rejected Husband's argument that Wife and Anza Neylon acted fraudulently by "conspir[ing] to pull off a 'bait and switch' – inducing him to cooperate in a transaction to buy Colony Club with a down payment from community funds." The court found the evidence did not support a finding of fraud: "[Husband], by his own testimony, was an active participant in the Colony Club process. He agreed with the decision to purchase, talked to loan brokers and property inspectors. He was informed of the cancellation by Anza Neylon within one (1) or two (2) days. While [Husband] objected, evidently vociferously, he took no action to revive the deal which he could have done since the only money invested at that time was community property.[2] He called no-one to object or even investigate further the details of the property inspection which [was] the stated reason for the cancellation. He waited almost 3 years before pursuing his claim with the exception of one (1) request for information on Kuleana. [3] [¶] Even more

---

[2]    Husband asked the trial court to cite a legal basis that required him to seek to revive the contract to purchase the Colony Club property in order for his damages for breach of fiduciary duty to be valued by that lost investment opportunity. The court replied that its reference to Husband's failure to " 'resuscitate' " the cancelled Colony Club purchase "was a reference to Husband's attitude toward the investment and went to his credibility not to damages."

[3]    After the cancellation of the Colony Club purchase, the parties separated for about one and a half years. According to Husband, in Fall of 2002, he asked Anza Neylon to bring her entire file for the Kuleana property to California at Christmas "for the express purpose of disclosing and intending the title to reflect the community's interest in the property purchased with community funds." Anza Neylon testified that one year when she was coming home for Christmas, Husband sent her an e-mail stating that if anything ever happed to Anza Neylon, the State of Hawaii would get her property unless she designated someone as "a beneficiary" of her property. Husband did not ask for specific information or the documents regarding the Kuleana property. However, Anza Neylon did not respond to Husband's request. Wife testified that on one occasion Husband asked

3

problematic, however, is that there is no evidence of collusion between Anza Neylon and [Wife]. As trier of fact, this judge is still unclear as to whether Anza Neylon took advantage only of [her stepfather] or of both [Husband] and [Wife] in this case. [Anza Neylon's] testimony is that she requested the deposits in the Colony Club cancelled escrow be applied to [Kuleana]. She did not appear to tell [Wife] that. [Wife] had forwarded the $58,000.00 to her. [Wife] did cooperate with [Anza Neylon], against the wishes of [Husband], in applying the $58,000.00 to Kuleana. While they talked every day and had both a personal and professional relationship, there is no direct evidence that [Wife] participated in any scheme to set up a sham offer on Colony [Club] so Anza Neylon could buy Kuleana. There is no lost investment opportunity to the community or any investment of which [Husband] [was] unaware – he was informed throughout the whole process of purchase so restitution for Colony Club is not an issue. [¶] . . . Here, there is insufficient evidence of fraud as to the Colony Club transaction, and no fraud as to the Kuleana transaction. [Wife] was quite transparent with [Husband] about her intent to transfer the money to Anza Neylon for her use in Kuleana, despite [his] objections."

However, the trial court found that Husband was entitled to damages for the Wife's "unauthorized, in fact objected to, transfer of $58,000.00 to . . . Anza Neylon, which [was] used for Kuleana. [Wife] asked [Husband] to participate in a loan to Anza Neylon. [He] refused. [Wife] loaned the money anyway, variously characterizing it as a business or personal loan. It would be inequitable to allow her to characterize it as a business loan and thus claim the protection of Family Code [section] 1100[, subdivision] (d). Among other things, [Wife] did not account for the loan in any business balance sheets and so is deprived of that argument on a technical basis.[4] In effect, [Wife]

Anza Neylon for copies of "the title of the loan documents" to Kuleana property. Wife told Anza Neylon not to respond to Husband's request, and Wife believed Anza Neylon did not give Husband the information.

[4]     The trial court also found that after the $58,000 was repaid, "[Wife] deposited the check into her personal account, then to a [business] account from which she alleges she paid off a community property credit card debt. In fact, as later demonstrated by [Husband's expert] witness, Lucy Chung, [Wife] paid both personal and business

4

allowed her daughter, Anza Neylon, to keep $58,000.00 from a transaction [Husband] agreed to (Colony Club) for a transaction which he objected to (Kuleana). Under Family Code [section] 1101[, subdivision] (g) Husband is entitled to an award of 50 percent of the asset transferred (i.e. 50 percent of $58,000.00) plus fees and court costs." [5]

The trial court also found that Husband was entitled to attorney fees and costs, pursuant to Family Code section 1101, subdivision (g), which was set at $200,000. "In arriving at the amount of $200,000.00 for attorney's fees and costs, the Court notes that this issue is a troublesome one. [Husband] has incurred fees of approximately $364,000 of which he alleges 95% is due to the breach of fiduciary duty claim. Where, one must ask, is the economy in spending $364,000.00 to recover $29,000.00? Clearly, from the testimony, [Wife] and her daughter resisted discovery. [Wife] herself failed to return the $58,000.00 for several years, and then sought further to deny reimbursement to the community, by allocating it to pay off her personal bills. [Wife's] stories changed as the

expenses from [the community business account] and the Court concludes that the expenses paid were not community."

[5] The trial court also found Wife had breached her fiduciary duty to Husband by "her unilateral loaning (post separation loan) of $45,000 to Anza [Neylon] in community funds through [the community business], falsely classifying [the loan] as a 'business expense' to purchase [a Kona] property . . . ." However, the trial court did not award any damages based on that breach, which ruling is supported by substantial evidence. In August 2004, after the parties separated and before the filing of the dissolution petition, Wife unilaterally gave community business funds of $45,000 to Anza Neylon who used those funds as part of a down payment to purchase the Kona property in her name alone. Anza Neylon repaid the $45,000 to the community business within 30 days of the loan. Husband presented no evidence disputing the testimony of Wife and Anza Neylon regarding Anza Neylon's ownership of the Kona property and that she had repaid the $45,000 to the community business. Nor did Husband present any evidence demonstrating that Wife obtained any personal benefit from the loan of $45,000 that would give rise to an obligation to reimburse the community those funds (cf. *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1486 [a spouse may claim that post-separation the other spouse used community assets for personal benefit under circumstances that would give rise to an obligation to reimburse the community]), or award him damages in a sum equivalent to "the equity and profit from . . . the sale of [the] Kona" property as if the community had acquired an ownership interest in that property.

case progressed on the issue of characterization of the payment to Anza Neylon. While [Wife's] credibility is seriously damaged, [Husband], too, was less than credible in his attempt to soft-pedal his involvement in the Colony Club transaction. His transparent need to increase his damage request to offset [Wife's] equity from the family residence and allow his continued possession of it drove the case into the stratosphere. Given a consideration of all these factors, the award of attorney fees under Family Code [section] 1101[, subdivision] (g) is $200,000."[6]

A final judgment was entered on August 4, 2010. The trial court denied Husband's postjudgment motion seeking, among other things, to vacate the judgment or for a new trial. Husband filed a timely appeal from both the judgment and the order denying his motion for postjudgment relief.

## DISCUSSION

### I.  Husband's Breach of Fiduciary Duty Claim Against Wife

"Under Family Code sections 721 and 1100, spouses have fiduciary duties to each other with respect to the management and control of community property. (Fam. Code, §§ 721, subd. (b), 1100, subd. (e).)" (*In re Marriage of Hokanson* (1998) 68 Cal.App.4th 987, 992.) Family Code section 1101 provides, in pertinent part: (a) A spouse has a claim against the other spouse for any breach of the fiduciary duty that results in impairment to the claimant spouse's present undivided one-half interest in the community estate, including, but not limited to, a single transaction or a pattern or series of transactions, which transaction or transactions have caused or will cause a detrimental impact to the claimant spouse's undivided one-half interest in the community estate. [¶] (b) A court may order an accounting of the property and obligations of the parties to a

---

[6]     After the trial court issued its tentative statement of decision, the Wife filed a "Request for Statement of Decision," apparently asking the court how it determined its award of attorney fees and costs to Husband. The trial court replied that it had considered the fact that "Husband did not prevail on his Colony Club claim and the credibility of both parties, as well as their conduct in this case," and "[f]ees were allowed for the Kuleana issue based on a review of billing statements and the application of a reasonableness standard."

6

marriage and may determine the rights of ownership in, the beneficial enjoyment of, or access to, community property, and the classification of all property of the parties to a marriage. [¶] . . . [¶] (g) Remedies for breach of the fiduciary duty by one spouse . . . shall include, but not be limited to, an award to the other spouse of 50 percent, or an amount equal to 50 percent, of any asset undisclosed or transferred in breach of the fiduciary duty plus attorney's fees and court costs. The value of the asset shall be determined to be its highest value at the date of the breach of the fiduciary duty, the date of the sale or disposition of the asset, or the date of the award of the court. [¶] (h) Remedies for the breach of the fiduciary duty by one spouse . . . when the breach falls within the ambit of Section 3294 of the Civil Code [7] shall include, but not be limited to, an award to the other spouse of 100 percent, or an amount equal to 100 percent, of any asset undisclosed or transferred in breach of the fiduciary duty." (Fam. Code, § 1101, subds. (a), (b), (g), (h).)

In his reply brief, Husband essentially concedes there was substantial evidence supporting the trial court's findings, by "clear and convincing evidence," that Wife had not breached her fiduciary duty to him regarding the cancellation of the Colony Club purchase and the subsequent purchase of the Kuleana property by Anza Neylon.[8] He

---

7    Civil Code section 3294 reads, in pertinent part: "(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant. [¶] . . . [¶] (c) As used in this section, the following definitions shall apply: [¶] (1) 'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others. [¶] (2) 'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. [¶] (3) 'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

8    "Whether the test at the trial court is preponderance of the evidence or clear and convincing evidence, a substantial evidence standard of review applies on appeal. [Citations.]" (*In re Mark L.* (2001) 94 Cal.App.4th 573, 581, fn. 5.)

7

argues, however, that the trial court committed prejudicial error by not considering certain evidence that would have supported findings that Wife had breached her spousal fiduciary duty by her conduct after the purchase of the Kuleana property, including, among other things, providing false income verifications that allowed Anza Neylon to refinance the mortgage on the Kuleana property and later purchase the Kona property. We disagree.

Contrary to Husband's contentions, whether any of Wife's conduct after the purchase of the Kuleana property constituted breaches of spousal fiduciary duty were questions of fact to be resolved by the trial court. By its ruling the trial court implicitly found that except for certain conduct expressly found to be breaches, Wife's other conduct did not constitute breaches that caused damage to Husband's undivided one-half interest in the community estate. (Fam. Code, § 1101, subd. (a).) As an appellate court, "[i]t is not our task to weigh conflicts and disputes in the evidence. . . ." (*Duffy v. Cavalier* (1989) 215 Cal.App.3d 1517, 1539.) "Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment. Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact, which must resolve such conflicting inferences in the absence of a rule of law specifying the inference to be drawn. We must accept as true all evidence and all reasonable inferences from the evidence tending to establish the correctness of the trial court's findings and decision, resolving every conflict in favor of the judgment. [Citations.] [¶] We emphasize that the test is *not* the presence or absence of a substantial conflict in the evidence. Rather, it is simply whether there is substantial evidence in favor of the respondent. If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630-631.) Additionally, on appeal we do not " 'reassess the credibility of witnesses.' " (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.) Concededly, the trial court here

8

found Wife's credibility had "come[ ] up short" in her proffered testimony as to her conduct after the purchase of the Kuleana property. [9] Nevertheless, "[i]t is well settled that the trier of fact may accept part of the testimony of a witness and reject another part even though the latter contradicts the part accepted. [Citations.]" (*Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 67.) "[N]either conflicts in the evidence nor ' "testimony which is subject to justifiable suspicion . . . justif[ies] the reversal of a judgment, for it is the exclusive province of the [trier of fact] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." ' [Citation.]" (*Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1065.) These rules "will obtain even though to some triers of fact the evidence in the instant case would have seemed so improbable, impossible and unbelievable that a judgment contrary to that now on appeal would have inevitably followed." (*Romero v. Eustace* (1950) 101 Cal.App.2d 253, 254.)

Husband also argues he is entitled to a new trial because the trial court used a legally incorrect measure of damages. He specifically argues that the proper amount of damages must be predicated on either "the current value of the Colony Club property" (as he requested in the trial court), or "the lost profits wrongfully taken for the" Kuleana and Kona properties (as he requests for the first time on appeal.) We disagree. Civil Code section 3333 provides that "[f]or the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether

---

[9] The trial court ruled that Wife's "credibility has been tested in this case and for the most part, it comes up short: (1) [Wife] verified income for Anza Neylon that was incorrect and inflated; (2) [Wife] denied that she provided information to BNC Mortgage, a lender, but is listed as the 'contact name', (3) [Wife] instructed Anza Neylon not to provide information to [Husband] regarding Kuleana when he made a lame request to have the community added to title, (4) [Wife] denies any information regarding the refinances Anza Neylon completed and whether she received cash back or paid any personal expenses in those transactions when, in fact, Anza Neylon bought another property at Kihei Shores where [Wife] and her son had also purchased [property] post separation of the parties."

9

it could have been anticipated or not." Assuming that Civil Code section 3333 applies in a marital dissolution proceeding, "[i]t is within the sound discretion of the trier of fact to select the formula most appropriate to compensate the injured party." (*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc*. (1970) 1 Cal.3d 586, 599.) Here, the trial court chose to award damages, pursuant to Family Code section 1101, subdivision (g), limited to Husband's undivided one-half interest in community funds of $58,000 that had been unilaterally given to Anza Neylon by Wife over Husband's express objection. By its ruling the trial court found Husband had failed to demonstrate that the Wife's conduct had otherwise " 'cause[d]' a detrimental impact to [Husband's] undivided one-half interest in the community estate." (Fam. Code, § 1101, subd. (a).) Instead, the trial court ruled that Wife's breaches of spousal fiduciary duty required her only to account and reimburse the community estate one-half of $58,000. Husband relies on appellate decisions which have upheld damage awards where the factual situations presented allowed the trial courts to arrive at their conclusions. (See, e.g., *In re Marriage of McTiernan & Dubrow* (2005) 133 Cal.App.4th 1090, 1102-1103; *In re Marriage of Rossi* (2001) 90 Cal.App.4th 34, 40-43; *In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 971-973.) However, on appeal, we do not review the record for substantial evidence that would support a greater award of damages, as Husband suggests. Rather, our authority is only to determine whether there is substantial evidence supporting the judgment. "If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld." (*Howard v. Owens Corning, supra,* 72 Cal.App.4th at p. 631.) "*If such substantial evidence be found, it is of no consequence that the* [*trier of fact*] *believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.* [Citations.]" (*Bowers v. Bernards* (1984) 150 CalApp.3d 870, 874.)

The overarching premise of Husband's appellate arguments appears to be that the trial court should have found that (a) the community had acquired an ownership interest in the Kuleana property because Wife had promised that the community would be "silent investors" in that property and community funds had been used to purchase that property;

10

and (b) the community had acquired an ownership interest in the Kona property because community funds had been used to purchase that property. However, as we now discuss, the trial court reasonably found that Wife had not breached a fiduciary duty to put the community on the title to the Kuleana property. Additionally, the use of community funds to purchase the Kuleana and Kona properties was insufficient to establish that there was an agreement between spouses and Anza Neylon that the community would have an ownership interest in those properties.

Both the Kuleana and Kona properties were owned by Anza Neylon alone; neither Wife nor Husband was named on the title documents of those properties. Thus, Anza Neylon is both the legal owner and the presumed "owner of the full beneficial title" of the properties. (Evid. Code, § 662.) The presumption of title "can be overcome only by evidence of an agreement or understanding between the parties that the title reflected in the deed is not what the parties intended. [Citations.] [And,] [s]ignificantly, 'the presumption cannot be overcome solely by tracing the funds used to purchase the property . . . .' [Citations.]" (*In re Marriage of Brooks & Robinson* (2008) 169 Cal.App.4th 176, 189-190.) Applying these rules, we conclude the trial court could reasonably find that Anza Neylon's use of community funds to purchase the Kuleana and Kona properties was insufficient to establish that the community had acquired an ownership in those properties. As to any agreement between the spouses and Anza Neylon, the trial court's implicit ruling that there had been no agreement or understanding according the community an ownership interest in the Kuleana property was supported by substantial evidence. At trial Husband conceded he never had an agreement with Anza Neylon that the community would have an ownership interest in the Kuleana property and he admittedly refused to consent to the use of community funds to purchase the Kuleana property. Nevertheless, he believed the community had acquired an ownership interest in the property because Wife had promised that the spouses would be "silent 50/50 investors" in that property. However, there was no evidence that either Wife or Anza Neylon held a similar belief regarding the ownership of the Kuleana property. Wife specifically testified that her offer that the community acquire an

11

ownership interest in the Kuleana property was rejected by Husband. Anza Neylon also understood she was the sole owner of the Kuleana property as she never gave an accounting to either spouse regarding her use of the $58,000 and apparently secured subsequent refinancing of that property without seeking the spouses' consent believing that she had no responsibility other than to repay $58,000. Thus, the trial court could reasonably find Husband's "unilateral belief" was insufficient to establish that the spouses and Anza Neylon had entered into an agreement or understanding that accorded the community an ownership interest in the Kuleana property. (*Id.* at p. 190.) We therefore reject Husband's argument that the trial court should have held Wife to her promise that the community would have an ownership interest in the Kuleana property because "[a] promise is a promise whether or not one party agrees with the other terms of an offer . . . ." The trial court was free to find that Husband's rejection of Wife's offer relieved Wife of her promise to have the community acquire an ownership interest in the Kuleana property. Given Husband's admissions that he had been told about the cancellation of the Colony Club purchase and the use of community funds to purchase the Kuleana property, we cannot say the testimony of Wife and Anza Neylon regarding the circumstances surrounding those events was "inherently improbable or clearly false." (*Linear Technology Corp. v. Tokyo Electron, Ltd.* (2011) 200 Cal.App.4th 1527, 1534.) Concededly, "[t]he form of title presumption does not apply when it conflicts with the presumption of undue influence by one spouse over the other. [Citations.]" (*In re Marriage of Brooks & Robinson, supra,* 169 Cal.App.4th at p. 190, fn. 8.) Here, however, the trial court could reasonably find there was no evidence demonstrating that the title of the properties in Anza Neylon's name alone was due to any undue influence exerted by Wife over Husband that "caused . . . a detrimental impact to [Husband's] undivided one-half interest in the community estate." (Fam. Code, § 1101, subd. (a).) Husband admittedly was told that Anza Neylon was purchasing the Kuleana property for herself and that Wife was giving community funds of $58,000 to Anza Neylon for the purchase of that property. Consequently, we reject Husband's argument that the trial court abused its discretion in failing to award him either 50 or 100 percent of the equity

12

in any of the Hawaiian properties (Colony Club, Kuleana, Kona) as if the community had acquired an ownership interest in those properties.

## II.    Trial Court's Award of Attorney Fees and Costs to Husband

### A.    Relevant Facts

In his trial brief dated May 7, 2009, Husband asserted he had incurred attorney fees and costs of $175,603, payable only to his then current and now former counsel, through April 10, 2009, and not including much of the work done in preparation for trial. He asked the trial court to direct Wife to contribute "$200,000 for his attorney fees and costs, including his expert witness fees," in pursuing his breach of fiduciary claim against her.

At the trial Husband's counsel submitted statements for attorney fees and costs showing that from October 10, 2006 through June 10, 2009, Husband had incurred attorney fees and costs totaling $286,890.02, consisting of $240,943 for attorney fees, miscellaneous costs of $8,636.92, expert witness fee of $23,258.50, and costs of $14,051.60, which represented expenses incurred in arranging to depose Anza Neylon in Hawaii. In closing argument on July 14, 2009, Husband's counsel argued that "declarations will show and the bills show"[10] that Husband "has spent in excess of $364,000" in attorney fees and costs of which he claimed 95 percent "was dedicated to the" breach of fiduciary claim.

In its judgment the trial court awarded Husband the sum of $200,000 as attorney fees and costs. In his postjudgment request for a new trial, Husband, representing himself, challenged the award of attorney fees and costs, arguing that the trial court should amend its judgment or hold a new hearing on the matter "based on the testimony given at trial regarding the amount and reasonableness of the actual fees incurred and

---

[10]    The record includes a white binder marked "trial exhibits" that contains documents marked as Trial Exhibits D-1, D-2, and D-3, which are bills for attorney fees and costs from Husband's counsel. Husband makes no reference to these exhibits in his briefs. Also, the record does not include counsel's declarations that were referred to in closing argument. Nor does the record contain any declarations or bills from Husband's counsel regarding attorney fees and costs incurred after June 10, 2009.

paid for by husband, i.e. $374,300 and can now be proven to be $409,000." On appeal, Husband now argues that "[to] his damage, he was forced to spend $425,000 in legal fees and costs searching for his true share of the community estate."

### B. Analysis

We review the trial court's award of attorney fees and costs for an abuse of discretion. " 'When the trial court substantially reduces a fee or cost request, we infer the court has determined the request was inflated.' [Citation.]" (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 998.) "The ' "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' [Citation.]" (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.) Here, we cannot say the trial court was clearly wrong in its award of $200,000 for attorney fees and costs.

The trial court awarded Husband about 55 percent of attorney fees and costs of $364,000, instead of 95 percent requested by Husband. In reducing the award, the trial court considered that after discovery in 2005, Husband was aware that the community estate had not acquired any ownership interest in any of the Hawaiian properties at issue – namely, the Colony Club, Kuleana, and Kona properties. Contrary to Husband's argument, the community did not acquire an ownership interest in the Kuleana or Kona properties merely because Wife could not establish that the community funds she gave to Anza Neylon were her separate property from her portion of the earnings of the community business. However, because Wife resisted reimbursing the community the $58,000 and contended the funds had been used to pay community expenses, Husband was required to pursue his claim for reimbursement at trial. We see nothing unreasonable about the trial court's award of about $154,000 in attorney fees plus about $46,000 as costs for discovery and the expert witness fee to pursue the breach of fiduciary claim. Additionally, we see nothing unreasonable about the trial court's comment that Husband's "soft-pedal" of his involvement in the Colony Club property caused the attorney fees and costs to be unnecessarily increased "into the stratosphere." The

14

comment was apparently based on the trial court's findings that Husband admittedly knew the Colony Club property purchase had been cancelled and yet he had sought to recover damages as if the spouses had acquired an interest in that property; that Husband admittedly knew that Wife had given $58,000 to Anza Neylon for the purchase of Kuleana property in Anza Neylon's name alone, and that none of Wife's conduct after the purchase of the Kuleana property had caused any monetary damage to Husband's undivided one-half interest in the community estate. Anza Neylon had repaid the $45,000 within 30 days of receipt of those funds from Wife. Although Anza Neylon also repaid the $58,000, the trial court required Wife to reimburse the community estate one-half of those funds because they were traceable to Wife's payment of personal expenses and not community expenses. Contrary to Husband's contention, the trial court was not required to accept his counsel's argument regarding the allocation of attorney fees and costs attributed to his breach of fiduciary duty claim. Even after the reduction, the award of attorney fees and costs ($200,000) was about seven times the amount Husband recovered in damages ($29,000). On this record, we cannot conclude the trial court abused its discretion or otherwise rendered an award that was unreasonable or inadequate.

III. **Husband's Request for Sanctions in Trial Court and Wife's Request for Sanctions and Attorney Fees on Appeal**

Husband contends the trial court erred in failing to award him sanctions based on Wife's failure to comply with financial disclosure requirements during the dissolution proceeding. He specifically contends that such an award is authorized in Family Code section 271, which reads, in pertinent part: "(a) Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the

15

parties' incomes, assets and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award. [¶] (b) An award of attorney's fees and costs as a sanction pursuant to this section shall be imposed only after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard."

At trial Husband did not seek Family Code section 271 sanctions against Wife in either his trial brief or his closing argument after the trial. He sought only attorney fees and costs pursuant to Family Code section 1101 for the Wife's breach of fiduciary duty. During closing argument Husband's counsel argued that attorney fees and costs incurred to prove the fiduciary breaches were so high because it was difficult to get an honest answer from Wife and it was "nine times as difficult" to get credible information even in the course of discovery. [Husband] had to file two motions to join [Anza Neylon]. We know [Wife] could have readily obtain[ed] the information we were seeking from Anza [Neylon] her daughter. Instead, [Husband] had to retain an Hawaii attorney. We have had to have subpoenas issued in Hawaii. We had to get all the proper legal arrangements to have her deposition taken in Hawaii and she didn't show up. This was a very expensive case for [Husband] admittedly but not by his doing." Husband sought an award of 50 percent of attorney fees incurred "given . . . all of the hoops that [Husband] had [to] go to in attorney fees trying to get to the bottom of this." It is only in his postjudgment motion for relief that Husband first mentions Family Code section 271 in the context of an argument that the court should either award more attorney fees and costs for the pursuit of his breach of fiduciary duty claim or hold a new hearing on the issue. After a hearing, the trial court denied Husband's request for postjudgment relief without comment. We see no prejudicial error requiring reversal. The trial court could have found that the issue of sanctions, as distinct from attorney fees and costs to pursue the breach of fiduciary duty claim, had not been set forth in a manner that put Wife on notice to expressly respond to a request for sanctions pursuant to Family Code section

16

271.  Also, because Husband made no specific request for Family Code section 271 sanctions at the hearing on the postjudgment motion, we cannot say the trial court abused its discretion in disregarding the issue.[11]

---

[11]     We deny Wife's separate motion for sanctions as well as her request in her responsive brief for sanctions pursuant to Family Code sections 271, 2030, 2031, and 2032, which are based on Husband's failure to comply with the rules governing appeals. Concededly, Husband's opening and reply briefs do not comply with California Rules of Court, rule 8.204(a)(1)(C) [briefs must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].) "Although [this failure] subject[s] the briefs to being stricken, we have elected to disregard the noncompliance.  (Cal. Rules of Court, rule 8.204(e)(2)(C).)"  (*In re Marriage of Brooks & Robinson, supra,* 169 Cal.App.4th at p. 180, fn. 1.)  To the extent passages in Husband's briefs "are not supported by record references, . . . we [have] consider[ed] those . . . passages to be argument rather than factual assertions." (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 195 (*Ragland*).)  We also have not considered those portions of the clerk's transcript and exhibits that were not considered by the trial court, including, among other documents, the parties' settlement conference statements, Wife's declaration opposing Husband's joinder motion filed in 2005, or any portions of the transcripts of deposition testimony that were not admitted into evidence but were used only to impeach the trial testimony of witnesses.  The trial court took judicial notice of Husband's supplemental declaration and annexed exhibits that were filed on August 23, 2005.  When the court asked the relevance of the documents, Wife's counsel replied,  "The relevance is of what Mr. Kavalaris knew as of that date regarding the underlying transactions [relating to his claim of] breach of fiduciary duty."  The court replied, "Okay," and asked Husband's counsel if she had any objection, to which she replied, "No, Your Honor."  Given the limited basis for which the trial court admitted the declaration and the exhibits, we have also considered those documents for only that limited basis.  To the extent Husband argues to the contrary, the trial court did not, and this court cannot, take judicial notice of the truth of any of the factual statements in the Husband's declaration or the attached exhibits.  (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882 (*Lockley*) ["[c]ourts may not take judicial notice of allegations in . . . declarations . . . in court records because such matters are reasonably subject to dispute and therefore require formal proof"].)

We also deny Husband's request for judicial notice of Anza Neylon's voluntary bankruptcy petition filed on April 6, 2007 in the United States District Bankruptcy Court of Hawaii, which document was not submitted in the trial court.  (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 ["[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court. . . . [N]ormally 'when reviewing the correctness of a trial court's judgment, an appellate

## DISPOSITION

The judgment is affirmed.  Respondent Linda M. Rock is awarded costs on appeal.

_____
Jenkins, J.

We concur:


_____
Pollak, Acting P. J.


_____
Siggins, J.

---

court will consider only matters which were part of the record at the time the judgment was entered.' [Citations.]"]; *Ragland, supra,* 209 Cal.App.4th at pp. 193-194 [appellate court refused to take judicial notice of facts concerning lender's financial condition at time of alleged fraud where facts were not presented in the trial court].)  No exceptional circumstances exist that would justify our taking judicial notice of the bankruptcy petition.  To the extent Husband asks us to take judicial notice of the *existence* of the bankruptcy petition (Evid. Code, § 452, subd. (d)(2)), the request is unnecessary because Anza Neylon admitted she filed for "Chapter Seven bankruptcy."  To the extent Husband asks us to take judicial notice of the bankruptcy petition to corroborate certain information in the document, impeach the trial testimony of Anza Neylon and Wife, and verify his allegation that Wife in concert with Anza Neylon fraudulently took $410,000 in community property investment proceeds, we cannot grant the request as "[t]he truth of any factual matters that might be deduced from [the bankruptcy petition] is not the proper subject of judicial notice." (*Lockley, supra,* 91 Cal.App.4th at p. 885; see *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1607, fn. 1 [appellate court refused to take judicial notice of the truth of the bankruptcy court's finding that filing of bankruptcy petition " 'was part of a scheme to delay, hinder and defraud creditors . . .' "].)