Filed 3/10/22  Ni v. Board of Registered Nursing CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WENSHI NI,<br>    Plaintiff and Appellant,<br>v.<br><br>BOARD OF REGISTERED<br>NURSING,<br>    Defendant and Respondent. | A163171<br><br>(Alameda County<br> Super. Ct. No. RG20063543) |

As a result of proceedings before the Board of Registered Nursing (the Board), Wenshi Ni's (Ni) license as a registered nurse was revoked, the revocation was stayed, and Ni's license was placed on probation for five years subject to certain terms and conditions.  Ni challenged the Board's decision by way of petition for writ of administrative mandate, which was denied.  Ni now appeals that denial, and we affirm.

## FACTS

### A.    Background

On August 23, 2006, the Board issued a registered nurse license to Ni.  She worked at a hospital from March 2007 until March 2015, when her license was temporarily suspended pending the investigation and prosecution of alleged criminal conduct associated with her ownership and management of five massage parlors.

Between October 2013 and April 2014, the Alameda County Sheriff's Office conducted an undercover operation targeting suspected

prostitution activity at Ni's massage parlors.  As a result of the police operation, Ni was arrested and the Alameda County District Attorney filed an information charging her with 32 counts, including the several felony offenses for pimping and pandering (Pen. Code, §§ 266j, 266i), and several tax-related offenses including failing to file a return or report with the intent to evade unemployment insurance taxes for massage therapists working in her establishments with the intent to evade taxes (Unemp. Ins. Code, § 2117.5[1]).

On June 9, 2015, pursuant to a plea agreement, Ni pleaded no contest to violating Unemployment Insurance Code section 2117.5, as a felony offense; in exchange, the remaining charges were dismissed. The trial court suspended imposition of sentence and placed Ni on formal criminal probation for five years under specified terms and conditions, including that she was not to own or manage any establishment that provided massage services.

According to Ni, in August 2015, she submitted to the Board documentation regarding her felony conviction.  Thereafter, the Board ended the temporary suspension and reinstated Ni's nursing license.

Eighteen months later, on January 6, 2017, Ni was arrested for violating her criminal probation based on an allegation that she was

---

[1]     Unemployment Insurance Code section 2117.5 reads: "Any person who, within the time required by this code, willfully fails to file any return or report, or to supply any information with intent to evade any tax imposed by this code, or who, willfully and with like intent, makes, renders, signs, or verifies any false or fraudulent return, report, or statement or supplies any false or fraudulent information, is punishable by imprisonment in the county jail not to exceed one year, or in the state prison, or by a fine of not more than twenty thousand dollars ($20,000), or both the fine and imprisonment, at the discretion of the court."  The section defines a wobbler offense.

providing massage therapy services at a location that previously housed one of her massage parlors. On March 1, the trial court found Ni had violated her criminal probation, and she was sentenced to 112 days in county jail with credit for time served of 112 days. Her criminal probation was reinstated with additional conditions, including that she not obtain a massage license and not provide "any sort of massage".[2]

### 1. June 1, 2017 Accusation and April 2018 Board Decision to Revoke License

On June 1, 2017, the Board served and filed an accusation, later amended, seeking revocation of Ni's license. The accusation was based on allegations that Ni "is subject to disciplinary action under sections 2761, subdivision (f) and 490" of the Business and Professions Code[3], "in that she was convicted of a felony substantially related to the qualifications, functions, and duties of a registered nurse" (first cause for discipline), and she "is subject to disciplinary action under section 2761, subdivision (a), in that she engaged in unprofessional conduct" based on her ownership and operation of massage parlors where she and her employees were engaged in prostitution-related activity (second cause for discipline) (§ 2761, subd. (a)). Ni filed a notice of defense and requested a hearing before an administrative law judge (ALJ).

---

[2] After reinstatement of criminal probation, as of April 2017 Ni was working at a skilled nursing facility providing care for elderly clients. Her license was set to expire on October 31, 2019, unless renewed.

[3] All undesignated statutory references are to the Business & Professions Code.

At the December 6, 2017 hearing, the ALJ considered various documents submitted by the Board, as well as the testimony of Ni and the Board's expert witness on the qualification, functions, and duties of a nurse.

On April 19, 2018, the Board, having adopted the ALJ's proposed decision and recommendation, revoked Ni's license based on her felony conviction and violation of criminal probation, and for unprofessional conduct. The revocation was made effective as of May 18, 2018.

The ALJ's proposed decision recites the following factual findings and legal conclusions based on the first cause for discipline – Ni's criminal conviction and violation of criminal probation.

*a. Factual Findings*

Ni testified that the massage therapists were independent contractors (not employees) that leased space in her establishments to provide massage services. Based on advice from her tax preparer/accountant that the massage therapists were not her employees, she did not collect and/or pay unemployment insurance taxes. She pleaded no contest to a violation of Unemployment Insurance Code section 2117.5 because prosecutors agreed to dismiss all other charges against her and to dismiss the case against her parents, who were owners of some of the buildings where the five massage parlors were located. Ni also offered the December 11, 2017 decision by the California Employment Development Department (EDD) of the Unemployment Insurance Appeals Board ("EDD decision") to establish she did not violate the law or for mitigation purposes. As set forth in that decision, the EDD determined Ni was not an employer of the massage therapists who worked in her massage parlors; rather,

4

the massage therapists were independent contractors for whom Ni was not responsible for paying unemployment insurance taxes.[4]

The ALJ found that, despite the EDD's decision, Ni's contention that she did not employ the massage therapists working at her massage parlors "is simply not credible and not supported by the evidence. Although [Ni] asserted the therapists were independent contractors leasing space at her massage parlors, she admitted she filed

---

[4]     On June 27, 2016, Ni filed a petition for reassessment of an EDD assessment issued under Unemployment Insurance Code section 1126 for the period January 2006 through March 2014, raising the issues of whether "workers were employees of [Ni] and if so, whether [she] is liable for unemployment, employment training, and disability contributions, personal income tax withholdings, penalties, and interest." In its 2017 ruling in Ni's favor, the Unemployment Insurance Appeals Bureau explained: "In the present case [Ni] was credible in her testimony which was corroborated by documentation in the file that [she] had no employees and that she had no intent not to pay employer payroll taxes. The therapists were not [her] employees and [she] invested in real estate with the help of family, and collected rent as a landlord. [She] is a licensed certified massage therapist and subleased space to other licensed massage therapists, who set their own working time, price, and brought their own equipment and materials to the space leased to them by [Ni]. [Ni] did not train or supervise the therapists, did not control their hours or rates or any aspect of their work, and received a fixed amount of rent. [She] maintained her own practice and leased space to other therapists. She was not and has never been an employer of other massage therapists." The "notice of assessment for the period beginning January 1, 2006 and ending March 31, 2014" was cancelled, and it was ordered that Ni "is not liable" for any payment pursuant to Insurance Code section 1126.

The disciplinary matter was originally submitted for the ALJ's decision on December 6, 2017. Thereafter, Ni filed a motion to reopen the record to admit the EDD decision. Over the Board's objection, the ALJ admitted the EDD decision into evidence and the case was again submitted for the ALJ's decision on January 5, 2018. By our order dated October 27, 2021, we granted Ni's *unopposed* motion to augment the record on appeal to include the EDD decision.

5

Internal Revenue Service (IRS) Form 1099 reports for the massage therapists reporting income she paid to the therapists. [Ni] would not report income paid to therapists in a Form 1099 if she was only leasing space to these therapists; to the contrary they would be paying [Ni] for the leased space. [Ni's] payments to the therapists that worked in her establishments minimally established an agency relationship between [Ni] and the therapist. . . ."

The ALJ did not find credible Ni's explanation regarding her criminal probation. Ni "testified that she did not intentionally violate the terms and conditions of her probation on January 6, 2017. [She] claimed that she resided [at a specified building address] . . . she only performed individual massages . . . and was not operating a business after her June 2015 conviction. She asserted she thought she was allowed to perform personal massages as long [as] she did not operate a massage parlor or employ massage therapists. [She] testified that the signage in front of the building was never removed after [her] massage parlor was closed in June 2015, and that she was not operating a massage parlor . . . on January 6, 2017. [Her] testimony, however, is not credible in light of the deputies' observations that a full service massage business was still operating at that location."

b. *Legal Conclusions*

The ALJ determined that Ni incurred a felony conviction on June 9, 2015, for failing to pay and/or withhold unemployment insurance taxes with the intent to evade payment of taxes for the massage therapists working in her five massage parlors. "Pursuant to section 2761, subdivision (f), . . . [t]he felony conviction itself provides a basis for . . . disciplinary action. However, the conduct underlying this

6

conviction, intentionally evading the payment of unemployment insurance taxes, evidences dishonesty which also renders the conviction substantially related to the practice of nursing. (See *Windham v. Board of Medical Quality Assurance* (1980) 104 Cal.App.3d 461 (holding a tax evasion conviction was substantially related to the qualifications, functions, or duties of a physician).)"

The ALJ also determined that "the Unemployment Insurance Appeals Board decision is not binding in this proceeding," commenting that Ni "failed to offer any evidence, other than her own conflicting testimony, to support her contention that she did not employ the massage therapist[s] working in her establishments," and that Ni had knowingly pleaded no contest to the felony conviction in her criminal case. In any event, the ALJ concluded that Ni could not use the underlying facts and circumstances surrounding the crime to impeach or collaterally attack the conviction during the license discipline proceeding as the record of the conviction constituted "conclusive evidence that [she] violated Unemployment Insurance Code section 2117.5, which necessarily establishes that [she] was an employer for purposes of the Unemployment Insurance Code and that she employed the massage therapists providing massages in her establishments." The ALJ acknowledged that "[a]t best [Ni] may present the Unemployment Insurance Appeals Bureau [decision] for purposes of mitigation for any discipline imposed."

Following the Board's revocation of her license, Ni filed for relief from her felony conviction. On June 15, 2018, the trial court granted Ni's application to reduce her felony conviction to a misdemeanor (Pen. Code, § 17, subd. (b)) and for early termination of her criminal

7

probation (Pen. Code, § 1203.3).  On August 18, 2018, the trial court granted Ni's request for dismissal of the conviction (Pen. Code, § 1203.4).[5]

### 2. March 11, 2019 Trial Court Order and Issuance of Writ Directing Board to Vacate Revocation and Conduct Further Proceedings

Following the dismissal of her felony conviction, Ni sought judicial review of the Board's order revoking her license.  On March 11, 2019, the trial court granted Ni's petition for a writ of administrative mandate and remanded the matter to the Board for further proceedings.

The trial court initially rejected Ni's challenges to the Board's decision to impose discipline based on Ni's felony conviction.  In so concluding, the court stated:

"The Board acted properly in imposing discipline based on [Ni's] no contest plea to the felony of failing to pay or withhold[ing] unemployment insurance taxes.  The question of whether a conviction is 'substantially related' to professional qualifications is a question of law.  (*Krain v. Medical Board* [(1999)] 71 Cal.App.4th 1416, 1424 [whether a conviction is 'substantially related' to professional qualifications is question of law].)  The crime for which [Ni] was convicted involves '[t]heft, dishonesty, fraud, or deceit' and therefore was a proper basis for discipline. [6] [¶] *Windham v. [Board of Medical]*

---

5    On October 27, 2021, we granted Ni's unopposed motion to augment the record on appeal to include the trial court's June 15, 2018 and August 30, 2018 orders regarding Ni's felony conviction, which documents were attached to Ni's first writ petition and are part of the administrative record filed in this case.

6    The court noted in its decision that the ALJ found "the criminal conviction for failing to pay or withhold unemployment insurances taxes 'evidences dishonesty which . . . renders the conviction substantially related to the practice of nursing.' "  The court further stated, "A felony conviction based on a no contest plea, standing alone,

8

*Quality Assurance* [(1980)] 104 Cal.App.3d 461, relied upon by the ALJ, is persuasive if not strictly controlling. . . . [¶] In this respect, the court notes, but does not rely upon, the growing trend to rely on nurses for primary care. [Citations.] . . .

"[T]he ALJ did consider the [decision of the Unemployment Insurance Appeals Board (EDD)], and correctly held that the decision was not binding; could not be used to collaterally attack [the] felony conviction; but was relevant – though not necessarily dispositive – on the issue of the appropriateness of revocation in light of any mitigating factors. [Citation.]

"Considering the EDD decision solely as it relates to mitigation was correct. A person who pleads no contest to a crime may not, in an administrative proceeding, seek to re-litigate his or her guilt or innocence. (*Arneson v. Fox* (1980) 28 Cal.3d 440, 449.) Rather, he or she may offer evidence of extenuating circumstances as relevant to mitigating the level of the penalty, which will be considered with other relevant factors. (*Id.*) . . .

"Relatedly, [Ni] also asks this court to consider the dismissal of her conviction on August 30, 2018 pursuant to her application for relief under Penal Code section 1203.4. While the post-hearing dismissal potentially may be raised in this court in the first instance . . . , it too is relevant solely to mitigation. A felony conviction that is later reduced or dismissed remains a proper basis for disciplinary action, including revocation. (Bus. & Prof. Code, § 490 (c) . . . [defining 'conviction' and providing that [the] Board may take action 'irrespective of a subsequent order under Section 1203.4 of the Penal Code']; cf. *Danser v. Public Employees' Retirement System* [(2015)] [ ] [240] Cal.App.4th 885, 892 [affirming disciplinary action (forfeiture of retirement benefits) based on felony conviction that was later reduced by trial court to a misdemeanor and expunged pursuant to Penal Code [section] 1203.4].)"

---

may not be a basis for revocation unless it bears a substantial relationship to the profession at issue. (See *Arneson v. Fox* (1980) 28 Cal.3[d] 440, 448–449 ['So long as there exists the requisite substantial relationship mandated by section 490, due process principles are satisfied.'].) Here there was no error because a substantial relationship existed."

The trial court went on to find, however, that the Board had failed to establish, by clear and convincing evidence, a second and independent basis for discipline on the unprofessional conduct charge. In so concluding, the court stated: "The evidence of unprofessional conduct consisted exclusively of unsworn police reports. That a few reports contained party admissions – in the form of alleged damaging admissions by [Ni] – does not satisfy the clear and convincing standard applicable here given that (1) none of the deputies testified; (2) none of the physical evidence (recordings, receipts) was offered; and (3) [Ni] disputed the contents of the reports in her own live, sworn testimony before [the ALJ]. Particularly in the face of [Ni's] denials, the statements in the unsworn police reports are not sufficient to satisfy the high burden of proof that governs in a proceeding to impose discipline on a licensee." The court went on to note that the ALJ, having determined the police reports had the necessary indicia of trustworthiness, properly admitted them under Evidence Code section 1280 and *Lake v. Reed* (1997) 16 Cal.4th 448, and "consider[ed] any party admissions therein, with the remainder of the reports coming in to supplement as administrative hearsay." However, unlike the DMV proceeding in *Lake v. Reed*, the standard of proof at this disciplinary proceeding was higher; "where no officer testified at the hearing, and where no physical evidence was introduced; where [Ni's] sworn testimony disputed the contents of the police reports; and where the ALJ's credibility determinations were generally directed to other parts of [Ni's] testimony, the standard was not met."

As to the appropriateness of revocation, the trial court remanded the matter to the Board to reconsider the level of discipline based on

10

Ni's felony conviction, directing the use of the criteria outlined in the Board's " 'Recommended Guidelines for Disciplinary Orders and Conditions of Probation,' (10/02)."

The trial court issued an administrative writ commanding the Board: (1) to set aside and vacate its June 25, 2018 decision, revoking Ni's license; and (2) to hold further proceedings consistent with the court's March 11, 2019 order. The superior court clerk served a file-stamped copy of the March 11, 2019 order on both parties, and neither party filed a notice of appeal.

In its supplemental return to the administrative writ, the Board informed the trial court that, at a closed session meeting on April 10, 2019, the Board elected not to appeal the court's judgment granting Ni's writ petition. Five days later, on April 15, the Board vacated the license revocation, and Ni's license status was restored to active status. The next day, on April 16, the Board issued a "Briefing Order and Stay," directing both parties to submit written arguments limited to the facts presented at the administrative hearing for the Board's consideration before rendering its new decision on the appropriate level of discipline.

### B.     April 15, 2020 Board Decision on Reconsideration

On April 15, 2020, the Board issued its "decision after reconsideration," again revoking Ni's license, but staying the revocation and placing the license on probation for five years subject to certain terms and conditions.

The Board began its decision by setting forth the underlying facts of the accusation as previously set forth in the ALJ's proposed decision, which included a recitation of the information in the police incident

11

reports that lead to Ni's arrest.  The Board noted that the "incident reports were part of the . . . evidence in support of the Unprofessional Conduct cause for discipline.  Because the trial court found that the unsworn police reports were properly admitted at the administrative hearing, those facts are restated here.  When the trial court determined that the Unprofessional Conduct cause for discipline was unfounded, it concluded only that the unsworn statements – without more – were insufficient to meet [the Board's] burden of proof."

The Board then restated its earlier decision explaining why it had found Ni's felony conviction established a cause for discipline, specifically noting the felony conviction constituted "conclusive evidence" that Ni violated Unemployment Insurance Code section 2117.5, which established that she "was an employer for purposes of the Unemployment Insurance Code and that she employed the massage therapists providing massages in her establishments."

The Board went on to explain its reasons for deciding that an appropriate level of discipline was a stay of revocation and probation for five years.  It began by quoting its then-applicable regulations (Cal. Code Regs., tit. 16, § 1445, subd. (b), as amended Sep. 27, 1985) setting forth the criteria for evaluating the rehabilitation of a registered nurse who had been convicted of a crime, which included the following factors: (1) nature and severity of the acts or offenses; (2) total criminal record; (3) the time that has elapsed since commission of the acts or offenses; (4) whether the licensee has complied with any terms of parole, probation, restitution or any other sanctions lawfully imposed against the licensee; (5) if applicable, evidence of "expungement" proceedings pursuant to Section 1203.4 of the Penal Code; and (6)

evidence, if any, of rehabilitation submitted by the licensee.  The Board then stated:

"The above criteria [has] been considered in this case.  The nature and severity of [Ni's] conduct was extremely serious.  [She] engaged in an extensive business enterprise of providing unlawful prostitution services in massage parlors she owned and operated.  [She] enlisted the services of numerous females to accomplish this unlawful enterprise, negotiated payment for their prostitution services, and evaded paying unemployment insurance taxes for her employees.  Although [her] conduct did not involve patients, the evidence established that the communities in which [she] operated the massage parlors were concerned and impacted by her conduct.  In determining the appropriate level of discipline, 'protection of the public shall be the highest priority for the Board of Registered Nursing in exercising its licensing, regulatory, and disciplinary functions.'  (Bus. & Prof. Code, § 2708.1.)

"There has been a relatively short period of time, approximately six years, since [she] committed the conduct, and she remains on probation until June 2020.  [She] also has failed to comply with the terms and conditions of her criminal probation.  She violated probation in January 2017, when a probation search revealed that [she] was continuing to provide massage therapy services, even though she was prohibited to do so under the terms of her probation.  The sheriff deputies' probation search revealed that [she] continued to operate a full massage therapy service at her [specified] location.  [Her] explanation for her probation violation simply was not credible.

"Finally, [she] denied in every respect the unlawful conduct alleged in the Accusation.  She has not accepted any responsibility for her actions and did not present as a forthright and honest witness at hearing.  [She] showed no contrition, offered no character references on her behalf, and essentially provided no evidence of rehabilitation from her criminal conduct.  [She] offered the December 11, 2017 Unemployment Appeals Board decision for purpose of mitigation.  However, this decision is not binding in this proceeding, and in light of the sparsity of rehabilitation evidence offered by [Ni] in this proceeding, the decision is afforded little weight.

13

"Based on the totality of the evidence, [she] failed to establish that she has been sufficiently rehabilitated, such that her continued licensure as a registered nurse should be restricted by probation terms and conditions for a period of five years. Such restrictions would protect the public's health, safety, and welfare from significant risk of harm. Accordingly, [her] registered nursing license must be revoked, the revocation stayed, and her license subject to probationary terms and conditions for five years."

The Board's decision became effective on May 15, 2020.

## C.    Trial Court Proceeding

On May 11, 2020, Ni again petitioned for judicial review of the Board's decision after reconsideration, seeking a writ of administrative mandamus requiring the Board to vacate its decision to impose discipline for her felony conviction. Following briefing and oral argument, the trial court denied the petition, stating as follows:

"The petitioner was charged with some 32 felonies arising from her operation of several massage parlors. Petitioner entered into a plea bargain with the district attorney where she plead no contest and was then found guilty of the felony of [violating] Unemployment Insurance Code, [section] 2117.5, the willful failure 'to file any return or report, or to supply any information with intent to evade any tax. . . . [Record Citation]. [¶] In exchange for the plea to the single felony, petitioner received the dismissal of the 31 other felony charges. [¶] The sentence imposed by the court included an Order stating, 'do not own or manage any establishment that provides massages' during the term of her five years of probation. [Record Citation.]

"The plea of no contest by the petitioner to a violation of Unemployment Insurance Code [section] 2117.5 is unquestionably an admission of a felony crime involving moral turpitude. [¶] The admission and conviction of a felony crime involving dishonesty such as the crime of which petitioner admitted in exchange for the dismissal of 31 other felony charges, many related to prostitution, is substantially related to the qualifications and functions and duties of a nursing license holder, and evidences to [a] substantial degree the petitioner's

14

present and potential unfitness to hold a nursing license.  [(Cal. Code Regs., tit. 16, § 1444.)]

"The argument that an administrative hearing officer from a different administrative agency (the EDD) can trump the admission of commission of a felony in a plea bargain arrangement in the criminal court is an argument that is without merit.  As stated by the Supreme Court in *Arneson v. Fox* (1980) 28 Cal.3d 440 at [page] 449[:] 'Regardless of the various motives which may have impelled the plea, the conviction which was based thereon stands as conclusive evidence of appellant's guilt of the offense charge.'

"The Board's decision for the determination of culpability and for the sentence imposed are all supported in the record with substantial evidence and after application of the independent judgment test by the court, are determined to be supported by the weight of the evidence."

On July 13, 2021, the trial court entered a judgment denying the petition from which Ni timely appeals.

## DISCUSSION

### I.    Applicable Law

The Nursing Practice Act (§ 2700 et seq.) is the chapter within the Business and Professions Code concerning the practice of nursing. The Legislature has vested the Board with the discretion to take disciplinary action against a licensed nurse and to determine the suitable penalty to be imposed where a cause for discipline exists based on a "[c]onviction of a felony or for any offense substantially related to the qualifications, functions, and duties of a registered nurse, in which event the record of the conviction shall be conclusive evidence thereof." (§§ 2715, subd. (a), 2761, subd. (f).)  The Legislature has also provided that "[a] plea or verdict of guilty or a conviction following a plea of nolo contendere made to a charge substantially related to the qualifications, functions and duties of a registered nurse is deemed to be a conviction

15

within the meaning of this article. The board may order the license or certificate suspended or revoked . . . when the time for appeal has elapsed, or the judgment of conviction has been affirmed on appeal or when an order granting probation is made suspending the imposition of sentence, irrespective of a subsequent order under the provisions of Section 1203.4 of the Penal Code allowing such person to withdraw his or her plea of guilty and to enter a plea of not guilty, or setting aside the verdict of guilty, or dismissing the accusation, information or indictment." (§ 2765.)

Once the Board has found a basis to impose discipline, the Legislature has directed that the Board "shall discipline the holder of any license, whose default has been entered or who has been heard by the board and found guilty, by any of the following methods: [¶] (a) Suspending judgment. [¶] (b) Placing [the licensee] upon probation. [¶] (c) Suspending [the licensee's] right to practice nursing for a period not exceeding one year. [¶] (d) Revoking [the] license. [¶] (e) Taking other action in relation to discipling [the licensee] as the board in its discretion may deem proper." (§ 2759.)

The Board's regulations (at the time of its April 2020 decision (and currently) require that when deciding the level of discipline it shall consider its " 'Recommended Guidelines for Disciplinary Orders and Conditions of Probation' (10/02) [("the Guidelines")], which are hereby incorporated by reference. Deviation from these guidelines and orders, including the standard terms of probation, is appropriate where the board in its sole discretion, determines that the facts of the particular case warrant such a deviation – for example: the presence of mitigating factors; the age of the case; evidentiary problems." (Cal.

16

Code Regs., tit. 16, § 1444.5, amended Jul. 23, 2014[7].) The Guidelines state the recommended discipline for conviction for a felony or any offense substantially related to the qualifications, functions, and duties of a registered nurse is "*Revocation*," and "[o]ffenses that the Board deems to be substantially related include, but are not limited to . . . theft crimes . . . ." (Italics in original.)

The Guidelines also provide that in determining the appropriate level of discipline, the Board should consider such factors as: the nature and severity of the acts, offenses, or crimes under consideration; mitigation and rehabilitation evidence; compliance with conditions of court-ordered criminal probation; the licensee's overall criminal record; the time passed since the acts or offenses occurred; and evidence of the dismissal of criminal proceedings under Penal Code section 1203.4.

Similarly, the Board's regulations (at the time of the April 2020 decision) required it to consider the following criteria when evaluating whether a registered nurse, who was convicted of crime, has been rehabilitated: (1) "Nature and severity of the act(s) or offense(s)"; (2) "Total criminal record"; (3) "The time that has elapsed since commission of the act(s) or offense"; (4) "Whether the licensee has complied with any terms of parole, probation, restitution or any other sanctions lawfully imposed against the licensee"; (5) "If applicable, evidence of expungement proceedings pursuant to Section 1203.4 of the Penal Code"; and (6) "Evidence, if any, of rehabilitation submitted by

---

[7] On May 20, 2021, California Code of Regulations, title 16, section 1444.5 was amended to make a nonsubstantive change.

the licensee." (Cal. Code Regs., tit. 16, § 1445, subd. (b), amended Sep. 27, 1985.[8])

## II. The Board Did Not Err In Deciding that Ni's Felony Conviction is Cause for Discipline Under Section 490

---

[8] On May 20, 2021, California Code of Regulations, title 16, section 1445, subdivision (b), was amended to read, in pertinent part, as follows:

"(b) Suspension or revocation of a license or certificate.

"[¶]. . . [¶]

"(2) If the licensee or certificate holder has not completed the criminal sentence at issue without a violation of probation or parole, . . . , or the suspension or revocation is based on one or more of the grounds specified in Sections 2761 or 2762 of the [Business and Professions Code], the board shall apply the following criteria in evaluating a licensee or certificate holder's rehabilitation:

(A) the nature and gravity of the act(s), disciplinary action(s), or crime(s).

(B) The total criminal record.

(C) The time that has elapsed since commission of the act(s), disciplinary action(s), or crime(s).

(D) Whether the licensee or certificate holder has complied with any terms of parole, probation, restitution, or any other sanctions lawfully imposed against such person.

(E) The criteria in subdivisions (b)(1)(A) through (E), as applicable. [i.e., "[t]he reason for granting probation and the length(s) of the applicable parole or probation period(s)," "[t]he extent to which the applicable parole or probation period was shortened or lengthened, and the reason(s) the period was modified," "[t]he terms or conditions of parole or probation and the extent to which they bear on the licensee or certificate holder's rehabilitation," and "[t]he extent to which the terms or conditions of parole or probation were modified, and the reason(s) for the modification"].

(F) If applicable, evidence of dismissal proceedings pursuant to section 1203.4 of the Penal Code.

(G) Evidence, if any, of rehabilitation submitted by the licensee or certificate holder."

Ni challenges the Board's decision to impose discipline based on section 490, which we find unavailing. [9] "When a trial court rules on a petition for writ of mandate" challenging a Board's finding of a cause to impose discipline on a registered nurse, "it must examine the record for errors of law, and exercise its independent judgment to determine

[9]    In the trial court, the Board argued that in resolving Ni's second writ petition the trial court should not consider her substantive arguments challenging the use of her felony conviction as a cause for discipline because her failure to appeal from the March 11, 2019 order "arguably barred" her from relitigating that issue. The trial court impliedly rejected that argument as it considered Ni's substantive arguments in its order denying the second writ petition. In doing so, the court may have reasonably decided that Ni's failure to appeal after the decision on her first writ petition was justified as she was not aggrieved until such time as she was "adversely affected by a 'new' final decision by the Board," imposing some level of discipline for which she sought judicial review a second time. (*Kumar v. National Medical Enterprises, Inc.* (1990) 218 Cal.App.3d 1050, 1054–1057 [appellate court dismissed appeal from trial court order setting aside agency's decision and remanding matter for further proceedings as appellant had to fully exhaust administrative remedies by again proceeding to a final administrative decision before seeking redress in the courts by filing a second petition]; see also *Dhillon v. John Muir Health* (2017) 2 Cal.5th 1109, 1116 & fn. 2 [the Supreme Court *did not undertake* to answer " 'the broad question whether remands to administrative agencies are always immediately appealable' "].)

The Board's reliance on *Pollak v. State Personnel Bd.* (2001) 88 Cal.App.4th 1394, is misplaced as in that case the appellate court upheld the trial court's refusal to consider Pollak's renewed arguments challenging certain disciplinary charges that had been rejected in a previous writ proceeding, on the basis that Pollak had failed to file a motion for a new trial challenging the court's earlier ruling. (*Id.* at p. 1405.) Here, unlike the situation in *Pollak*, the trial court did not refuse to consider Ni's arguments challenging the use of her felony conviction to impose discipline, but rather addressed those issues on their merits. Under these circumstances, we deem it appropriate to address her arguments on the merits as well.

whether the weight of the evidence supported the administrative decision. [Citation.] After the trial court has exercised its independent judgment upon the weight of the evidence, an appellate court's function 'is solely to decide whether credible, competent evidence supports [the trial] court's judgment.' [Citation.] The trial court's legal conclusions, however, are open to appellate review for errors of law." (*Robbins v. Davi* (2009) 175 Cal.App.4th 118, 124.)

Section 490, "which applies broadly to professionals licensed under the Business and Professions Code . . . provides in relevant part: '(a) in addition to any other action that a board is permitted to take against a licensee, a board may suspend or revoke a license on the ground that the licensee has been convicted of a crime, if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued. [¶] (b) Notwithstanding any other provision of law, a board may exercise any authority to discipline a licensee for a conviction of a crime that is independent of the authority granted in subdivision (a) *only if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the licensee's license was issued.*' " (*Sulla v. Board of Registered Nursing* (2012) 205 Cal.App.4th 1195, 1205, italics in original.)

Section 481 requires each licensing agency to "develop criteria to aid it . . . to determine whether a crime or act is substantially related to the qualifications, functions, or duties of the business or profession it regulates." Here, the Board adopted section 1444, subdivision (a) of Title 16 of the California Code of Regulations, which, as amended in 2001 and in effect at the time of Ni's 2015 conviction, provided in

20

pertinent part, that: "A conviction or act shall be considered to be substantially related to the qualifications, functions or duties of a registered nurse if to a substantial degree it evidences the present or potential unfitness of a registered nurse to practice in a manner consistent with the public health, safety, or welfare. Such convictions or acts shall include but not be limited to the following: [ ] . . . [ ](c) Theft, dishonesty, fraud, or deceit." [10] The courts have held that whether a crime is "substantially related" to the qualifications, functions, or duties of a profession for which the license is issued "is a question of law" for the independent determination of this court. (*Krain v. Medical Board* (1999) 71 Cal.App.4th 1416, 1424; see *Gromis v. Medical Board* (1992) 8 Cal.App.4th 589, 598.)

---

[10] After the Board's April 2020 decision after reconsideration, California Code of Regulations, title 16, section 1444, subdivision (a) was amended May 20, 2021 to read in pertinent part:

"(a) For the purposes of . . . suspension, or revocation of a license . . . pursuant to . . . Section[] 2761 . . . of the [Business and Professions Code], a crime, . . . or act shall be considered to be substantially related to the qualifications, functions or duties of a person holding a license . . . under the Nursing Practice Act (Chapter 6 of Division 2 of the [Business and Professions Code]), if to a substantial degree it evidences the present or potential unfitness of a person holding a license or certificate to perform . . . in a manner consistent with the public health, safety or welfare.

"(b) In making the substantial relationship determination required under subdivision (a) for a crime, the board shall consider the following criteria: [¶](1) The nature and gravity of the offense; [¶] (2) The number of years elapsed since the date of the offense; and [¶] (3) The nature and duties of a registered nurse . . . .

"(c) For purposes of subdivision (a), substantially related crimes, . . . or acts shall include, but are not limited to the following: [¶] . . . [¶] (2) Theft, dishonesty, fraud, deceit . . . ."

21

Based on our independent review, we conclude that Ni's felony conviction for violation of Unemployment Insurance Code section 2117.5 was "substantially related" to her fitness as a registered nurse under section 490. In so ruling, we agree with the trial court (in addressing Ni's first writ petition) that *Windham v. Board of Medical Quality Assurance*, *supra*, 104 Cal.App.3d 461 (*Windham*), "relied upon by the ALJ, is persuasive if not strictly controlling. In *Windham*, the court held that a physician's felony conviction for tax evasion was substantially related to his ability to practice medicine such that it could support disciplinary action – there, license revocation stayed during a period of probation." While Ni posits *Windham* should not be followed because it concerns a physician, and not nurse, we agree with the trial court that such a factual distinction is not significant as "the most compelling and applicable aspect of *Windham*'s holding" is that "[d]octors and nurses . . . share a need to perform their work with utmost integrity so as to support and not violate the patient trust that is at the heart of their professional relationships. . . . 'Above all, [as explained by the *Windham* court,]. . . is the relation between doctor and patient. It is unnecessary to described the extent to which that particular relationship is based on utmost trust and confidence in the doctor's honesty and integrity.' (*Windham*, *supra*, 104 Cal.App.3d at p. 470.) The relation between a nurse and patient similarly depends on the utmost confidence of the patient in the honesty and integrity of the nurse." The trial court resolving Ni's second writ petition, similarly found that her "plea of no contest by petitioner to a violation of Unemployment Insurance Code § 2117.5 is unquestionably an admission of a felony crime involving moral turpitude. [¶] The

22

admission and conviction of a felony crime involving dishonesty such as the crime of which petitioner admitted in exchange for the dismissal of 31 other felony charges, many related to prostitution, is substantially related to the qualifications[,] functions and duties of a nursing license holder, and evidences to [a] substantial degree the petitioner's present and potential unfitness to hold a nursing license."

To the extent Ni challenges the trial court's factual finding upholding the Board's decision that there was a substantial relationship between her conviction and the practice of nursing, our review is limited to whether there is substantial evidence in the administrative record to support the trial court's finding. In challenging the evidence in that record, Ni appears to argue that the ALJ's credibility findings adverse to her must be set aside in favor of those credibility findings made in her favor in the EDD decision. However, in making our review, our authority "*begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the [trial court's] determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874; italics in original.) Hence, "[w]hen there is substantial evidence, although conflicting, that sustains the judgment an appellate court will not substitute its evaluation of the evidence or its opinion as to the credibility of the witnesses for that of the trial court. [Citations.] This rule will obtain even though to some triers of fact the evidence in the instant case would have seemed so improbable, impossible and

23

unbelievable that a judgment contrary to that now on appeal would have inevitably followed. [Citations.]" (*Romero v. Eustace* (1950) 101 Cal.App.2d 253, 254.) Thus, we must reject Ni's reliance on the EDD decision vis-á-vis the ALJ's factual findings. Because there is evidence in the administrative record supporting the trial court's ruling upholding the Board's decision that Ni's conviction was substantially related to the practice of nursing, we must uphold that ruling.

In light of our determination that the Board could impose discipline based on section 490, we do not need to address Ni's argument challenging the imposition of discipline based on section 2671.

## III. The Board Did Not Err in Deciding the Penalty

"[T]he propriety of a penalty imposed by an administrative agency is a matter vested in the discretion of the agency and its decision may not be disturbed unless there has been a manifest abuse of discretion. [Citations.]" (*Cadilla v. Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 966; see *Id.* at p. 967 ["[t]he choice of sanctions is a discretion legally vested in the administrative agency within the meaning of section 1094.5, subdivision (e), of the Code of Civil Procedure"].) Hence, "in a mandamus proceeding, an appellate court vis-à-vis *the trial court*, conducts a de novo review concerning possible abuse of discretion by the administrative agency. [Citation.] [¶] Conversely, . . . in a mandamus proceeding an appellate court vis-à-vis *the administrative agency*, does *not* independently or 'de novo' determine penalty. '[A] court cannot substitute its discretion for that of the administrative agency on the degree of punishment to be imposed.' " (*Cummings v. Civil Service Com.* (1995) 40 Cal.App.4th

24

1643, 1652, italics in original, quoting in part *Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210, 228.)

Section 490 states that "[a]n action that a board is permitted to take following the establishment of a conviction may be taken when the time to appeal has elapsed, or the judgment of conviction has been affirmed on appeal, or when an order granting probation is made suspending the imposition of sentence, irrespective of a subsequent order under Section 1203.4 of the Penal Code." Penal Code section 1203.4 provides, as relevant here: "In any case in which a defendant . . . has been discharged prior to the termination of the period of probation, . . . , the defendant shall, at any time after the termination of the period of probation, . . . , be permitted by the court to withdraw their plea of . . . nolo contendere and enter a plea of not guilty, . . . and . . . the court shall thereupon dismiss the . . . information against the defendant and . . . the defendant *shall thereafter be released from all penalties and disabilities resulting from the offense of which they have been convicted.*" (Italics added.)

Here, Ni posits that the Board had no authority to impose discipline on the basis of her conviction because, although the disciplinary action against her was pending for some time, the Board did not make its disciplinary order until *after* she had secured the dismissal of her conviction under Penal Code section 1203.4. While neither party cites to the case, *Meyer v. Board of Medical Examiners* (1949) 34 Cal.2d 62 (*Meyer*), is dispositive.

In *Meyer*, *supra*, 34 Cal.2d 62, the Board of Medical Examiners imposed an order suspending the appellant's medical license and placed him on probation for three years based solely on his conviction for

25

violating a narcotics provision of the Health and Safety Code. (*Id*. at pp. 62–63.) The discipline was imposed as of March 15, 1948, even though the Board of Medical Examiners had received a copy of a court order dismissing the conviction under Penal Code section 1203.4 at its March 2, 1948 hearing. (*Ibid*.) In upholding the discipline, the Supreme Court specifically rejected the appellant's argument that discipline was barred because the "respondent board, though having had the disciplinary action against appellant pending before it for some time, did not make its order of suspension against him until *after* he had been accorded the statutory relief in question." (*Id*. at p. 66, italics in original.) The court explained as follows: "[The] variant course in the chronology of the proceedings is an *immaterial consideration*, for whether the discharge from [criminal] probation and the accompanying relief granted by the trial court *precede or follow* the disciplinary order, its propriety stems from the adjudication of guilt constituting the basis of the 'conviction' and, as such, it is not a 'penalty' or 'disability' within the contemplated release of the probation statute." (*Ibid*., italics added.) After noting the limitations on the effect of a dismissal after conviction under Penal Code section 1203.4, the *Meyer* court went on to state that "it does not appear that [the statute] was . . . intended to obliterate the record of conviction against a defendant and purge him of the guilt inherent therein (citation) or to 'wipe out absolutely' and for all purposes the dismissed proceeding as a relevant consideration and 'to place the defendant in the position where he would have occupied in all respects as a citizen if no accusation or information had ever been presented against him' (citation). From this standpoint, [the] appellant's theory that the import of the probation statute and the

26

dismissal proceeding is to expunge the record of the crime (citation) cannot prevail." (*Meyer*, *supra*, at p. 67.) Accordingly, we conclude Ni's reliance on the fact that the Board's April 2020 discipline was imposed *after* she had secured dismissal of her conviction under Penal Code section 1203.4 in August 2018 "is of no avail." (*Meyer*, *supra*, at p. 66.)

Finally, Ni argues, without citation to authority, that the matter should be remanded for further proceedings concerning the *level* of discipline as the Board relied, in part, on Ni's denial "in every respect [of] the unlawful conduct alleged in the Accusation," along with her failure to accept "any responsibility for her actions" and lack of contrition. We are not persuaded. As detailed above, the Board's regulations and Guidelines permitted consideration of the nature of the circumstances that lead to Ni's arrest, that the felony conviction was the result of a plea bargain in which prostitution-related felony charges were dismissed, that Ni pleaded guilty to one felony count for violating Unemployment Insurance Code section 2117.5, and that she had violated her criminal probation. Simply put, there was a large body of evidence properly considered by the Board of which lack of contrition regarding the tax-related offenses was but one element. [11]

---

[11] The case before us is readily distinguishable from *Hall v. Committee of Bar Examiners* (1979) 25 Cal.3d 730). In *Hall*, the Committee of Bar Examiners "relied heavily" on Hall's failure to demonstrate adequate remorse. (*Id.* at p. 732.) The Committee did not attempt to argue that Hall's prior conduct, by itself, was sufficient to justify denial of certification, and the Supreme Court found that the prior conduct, by itself, would not compel denial of certification. (*Id.* at p. 742.)

## DISPOSITION

The judgment is affirmed. Each party is to bear their own costs on appeal.

_____
Petrou, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Rodríguez, J.

*A163171/Ni v. Board of Registered Nursing*